Aaron J. Tolson
*Attorney at Law*
2677 E. 17th St. #300
Ammon, ID. 83406
Telephone: (208 )228-5221
Facsimile:  (208) 228-5220
Email: ajt@aaronjtolsonlaw.com
*Debtor's counsel*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 20-40984 JDP |
| LEED CORPORATION (THE), | Chapter 11 Subchapter V |
| Debtor. | |

---

## 1st AMENDED CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION

---

The Leed Corporation, the Debtor, proposes the following *Plan of Reorganization* ("Plan").  It is important that you read this plan carefully to evaluate the impact such plan will have upon your claim or interest.

## **PLAN SUMMARY**

The purpose of this Plan is to provide more compensation to the UC2 Class rather than a Chapter 7 liquidation that may render a 50% or greater quick sale reduction in values resulting in no return for the UC2 Class.

This Plan consists of three components of the Debtor's operation, namely (1) the Landscaping operations, (2) the Farming of the 35 Acres, and (3) the Construction operations and the sale of lots in the Green Cut Subdivision and Riverview Subdivision (collectively, "Lots"). It is the Debtor's stated purpose under this Plan to: First, the Debtor's primary business operation is

in its landscaping business which has proven to be profitable over the years and currently has around 800 Customers. Second, the Debtor will farm the 35 Acres and provide a positive cash flow during the term of the Plan.

Third, the Debtor will provide construction on presold homes on an as needed basis and sale the Lots on the two developments during the term of the Plan. The current real estate market trend for the Lots based upon the BPO information from Hadden Realty indicates that home construction on lots is likely to profitable over the next few years.

## ARTICLE I
## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in this Plan of Reorganization and the Disclosure Statement shall have the following meanings:

1. ADMINISTRATIVE CLAIM: A cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of the Debtor, and all allowances approved by the Court in accordance with the Bankruptcy Code.

2 ALLOWED CLAIM: "Allowed Claim" shall mean a Claim:

(i)     in which a proof of Claim has been filed with the Court on or prior to the Bar Date, which claim has been determined by the Bankruptcy Court to be allowed by law; or

(ii)     which is scheduled in the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the Court pursuant to §521 of the Bankruptcy Code and which has not been listed (or is no longer listed on the Confirmation Date, if previously so listed) as disputed, contingent or unliquidated; or

(iii)     in respect of which a proof of Claim has been filed with the Court pursuant to §502(h) or §502(i) of the Bankruptcy Code; and in any case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule or an order of the Court, or as to which, if objections have been interposed, the Claim has been allowed by order of the Court.

3.    ALLOWED INTEREST:  "Allowed Interest" shall mean an interest in respect of which a proof of Interest has been filed with the Court on or prior to the Bar Date.

4.    BANKRUPTCY CODE:  "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U. S. C. §101 et seq. , and any amendments thereof.

5.    CLAIM:  "Claim" shall mean any right to payment or right to an equitable remedy against Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

6.    CLASS:  "Class" shall mean any class into which Claims or Interests are classified pursuant to the terms of the Plan.

7.    CONFIRMATION DATE:  The first business day occurring on or after the (14th) day after the Order of Confirmation is entered by the Court provided, however, that if a stay of the order confirming the Plan is in effect on such first business day, then the Confirmation Date shall be the first business day thereafter on which (i) no stay of the order confirming the Plan is in effect and (ii) the order confirming the Plan has not been vacated.

8.    CONTESTED CLAIM:  "Contested Claim" shall mean any Claim which is listed on the schedules filed by the Debtor as contingent, unliquidated or disputed or is, or becomes, the subject of an objection filed with the Court in accordance with the provisions of the Bankruptcy Code and which remains unresolved.

9.    COURT:  "Court" shall mean the United States Bankruptcy Court for the District of Idaho, presiding over the cases or, if necessary the United States District Court for said district having original jurisdiction over bankruptcy cases and the judges thereof.

10.    EFFECTIVE DATE:  The effective date of the Plan shall be the Confirmation Date as that term is defined above.

11.    IN FULL:  "In full" shall mean the amount owing as of the date of the filing of petition, the amount provided in a proof of claim owing as of the date of the filing of the petition, or the amount listed in the bankruptcy schedules filed with the Bankruptcy Court, whichever is less.  "In full" shall further mean a payment without post-petition interest, unless specifically provided for hereinafter.

12.    NET INCOME:  "Net Income" shall mean  the operating funds remaining to the Debtor after payment of all operating costs, taxes, capital improvements, plan payments to members of the secured and priority unsecured creditors classes as set forth herein, etc., during each Plan Year, as defined herein below, calculated annually.

13.    PLAN YEAR:  "Plan Year" shall be mean the year(s) immediately following the Effective Date.  For example, Plan Year One shall be the 12 months immediately following the

Effective Date, Plan Year Two shall be months 13 to 24 immediately following the Effective Date, and so on.

14.   PLAN TERM: "Plan Term" shall mean the five (5) years immediately following the Effective Date, without any prepayment penalty.

15.   PERSON:   "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organizations, or a government or any agency or political subdivision thereof.

16.   NET SALE PROCEEDS: "Net Sale Proceeds" shall mean that portion of the proceeds remaining to the Debtor, i.e. the Debtor's interest, from the sale of any of the real property, exclusive of realtor's commission, title fees, and ordinary and customary closing costs and fees.

17.   NET LITIGATION RECOVERY: "Net Litigation Recovery" means any and all funds recovered for the benefit of this estate, exclusive of the payment of attorney's fees and costs

18.   REVENUE CODE:   "Revenue Code" shall mean the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 1 et seq.

## ARTICLE II
## HISTORY

The Leed Corporation is an Idaho Corporation created on January 24, 1992, with its principal place of business in Shoshone, Idaho.  The Leed Corporation provides services for lawn care, landscaping, sprinkling systems, and it also conducts some farming.

Since 2016, The Leed Corporation has borrowed operating funds from over a dozen MCA companies and has paid back millions in principal and hundreds of thousands in interest and fees to these lenders.  In 2018, Debtor paid over $200,000 in interest and fees on these loans.  In 2019, Debtor paid over $300,000 in interest and fees.  Debtor paid approximately $400,000  in interest and fees in 2020.

Debtor's experience with these creditors lending practices in November and December of 2020 suggested that the MCA Companies are clearly in the loan lending business, but their loans

are disguised as MCA agreements.  A majority of these creditors demanded collection of payments regardless of Debtor's income or circumstances.

In October of 2020, Debtor's President, Lon Montgomery, became ill with COVID-19, which required him to quarantine, and he was forced to slow down Debtor's operations.  During this period, Mr. Montgomery evaluated the impact that the MCA companies' loans had on The Leed Corporation and the heavy burden it caused to Debtor and Mr. Montgomery as the guarantor.  These loans and their impacts were devastating upon the operations and the estate of The Leed Corporation, and Lon Montgomery's mental and physical health due to his illness.

Debtor tried numerous ways to pay back the MCA Companies, but once entangled, it is near impossible to break free from their grasp.  Their renewals are especially egregious with interest and fees added on top of upfront interest and fees.  Debtor became stuck in a rut of borrowing more and more, never having enough money to cover operating expenses because of the daily and weekly MCA debits that were drawn from Debtor's accounts.

The Leed Corporation would borrow MCA funds to pay its vendors and then would use its' income to pay the daily and weekly MCA payments and was able to maintain this cycle for four years until the pandemic struck in 2020.  When most of the MCA Companies Debtor had been dealing with either quit lending or went out of business because of the pandemic.  Debtor was forced to find new MCA companies from referrals from its brokers, so it could obtain sufficient working capital to run the business operations and service the existing MCA debts. The barrage of calls from these brokers for new companies was relentless and intensified with numerous texts and emails.  In July of 2020, one of these companies, Par Funding, who was funding the weekly reverse consolidation program, was shut down by the SEC.  This loss pushed Debtors to new lenders as well.

The brokers and companies would package multiple deals and would fund them simultaneously over a period of time to accomplish the total funding need for Debtor. Most of the MCA companies Debtor dealt with previously would lend greater amounts and the new MCA Companies created loans with shorter terms and higher fees claiming that it was due to the uncertainty of the pandemic, which only strained the resources of The Leed Corporation even farther.

In October, when Lon Montgomery was sick with COVID-19, and then recovering in November with minimal income, the MCA Companies still wanted reduced payments and Debtor tried to accommodate for the month of November and still paid around $40,000 to these creditors, but was not able to pay vendors sufficiently. Debtor could not keep this up and was forced to retain attorney, Aaron Tolson, who advised Debtor to file for bankruptcy should the MCA commence legal actions forcing the Estate to protect its assets to repay its creditors overtime through a reorganization plan.

From the moment the payments stopped, it was clear from the collection practices of the MCA companies that regardless of what their agreements stated as the percentage of the income, they demanded payments as a "loan agreement" would require. Debtor believes that the MCA companies evade the regulatory agencies in performing lending practices across state lines under the guise of MCA agreements. Debtor believes these MCA Companies have violated Consumer Protection Laws. Lon Montgomery has personally been threatened by representatives from three of these companies.

Besides the predatory lending practices of the MCA Companies and Lon Montgomery's bout with COVID-19, other events set The Leed Corporation back as well. In 2019, Lon Montgomery fell off of a trailer, completely tore and severed his Achilles tendon, and had to

have surgery to reconnect the tendon. He was on crutches from May until October of that year and The Leed Corporation had to hire additional labor to perform the corporation's work.

In addition, in 2020, Debtor's crew foreman, Joseph Petruska, was involved in a head-on collision with an intoxicated driver who had no insurance or driver's license. The loss of foreman resulted in a loss of productivity of the corporation, which resulted in a loss of income for the business. Furthermore, the company still paid the foreman's wages while he was recovering and The Leed Corporation's insurance for uninsured motorists covered his injuries.

### ARTICLE III
### CLASSIFICATION CLAIMS AND INTEREST

All allowed claims and allowed interests have been placed in the following classes. The Debtor has determined which claims fall into the classes described below. A Proof of Claim or interest which asserts a claim or an interest which is properly included in more than one class is in a class to the extent it qualifies within the description of such class and is in a different class to the extent it qualifies within the description of such different class.

1.   PRIORITY CLAIMS

A.   CLASS PC1:  Class PC1 consists of all allowed claims against the Debtor entitled to priority pursuant to 11 USC §507(a)(2) or §507(a)(3) of the Bankruptcy Code, but excluding the allowed claims included in Classes PC2 and PC3. The members of this class include the following:

1.   The Internal Revenue Service, pursuant to 11 USC § 507(a)(2) ;

2.   The State Tax Commission, State of Idaho, pursuant to 11 USC § 507(a)(2) and

B.    CLASS PC2:  Class PC2 consists of all allowed claims having priority by reason of the provision of 11 USC §507(a)(2) and § 330(a).  The members of this class include the following:

1.    Aaron J. Tolson, the attorney representing the Debtor in Possession;

2.    Jason L. Peterson, CPA

3.    Craig Hadden, Hadden Realty

4.    Matthew Grimshaw, Chapter V Trustee

5.    Such other professionals as the Court may subsequently approve.

C.    CLASS PC3:  Class PC3 consists of all allowed claims having priority by reason of the provision of 11 USC §507(a)(4).

1.    Gem State Staffing.

D.    CLASS PC4:  Class PC4 consists of all allowed claims against the Debtor entitled to priority pursuant to 11 USC §507(a)(8), consisting of claims of governmental units for taxes or duties in such amounts as may be allowed by the Bankruptcy Court.  This class includes the claims of the Internal Revenue Service (IRS); the Idaho Department of Labor and the Idaho State Tax Commission.

E.    CLASS PC5:  Class PC5 consists of all allowed claims having priority by reason of the provision of 11 USC §507(a)(1) and §507(a)(5) through §507(a)(7) of the Bankruptcy Code. There appear to be no members of this class.

2.    SECURED CLAIMS

A.    CLASS SC1:  Class SC1 consists of the allowed secured claim of One Main Financial.

B.      CLASS SC2:  Class SC2 consists of the allowed secured claim of Westmark CU.

C.      CLASS SC3:  Class SC3 consists of the allowed secured claim of Farm Bureau Finance Company.

D.      CLASS SC4:  Class SC4 consists of the allowed secured claim of Wells Fargo Leasing.

E.      CLASS SC5:  Class SC5 consists of the allowed secured claim of Red Rock Capital LLC.

F.      CLASS SC6:  Class SC6 consists of the allowed secured claim of Montrose Investments.

F.      CLASS SC 7:  Class SC7 consists of the allowed secured claim of Gerald Martens or his successors in interests

H.      CLASS SC8:  Class SC8 consists of the contested secured claims of those persons asserted secured claims pursuant to Idaho's UCC1 Lien Statute, namely Landmark Funding, CBSG-Par Funding-Contract Financing, United Company Funding, Fincoast Capital LLC, Mr. Advance LLC, Ibex Funding Group LLC, Crystal Springs Capital Inc., Spartan Business Solutions Inc., and Diverse Capital, LLC.  The Debtor retains the right to avoid the asserted liens of members of this class, and any other class set forth herein.  No payments shall be made to members of this class during the pendency of any adversary proceeding brought by the Debtor against members of this class. Lon Montgomery was a personal Guarantor.

I. CLASS SC9:  Class SC9 consists of the allowed secured claim of Maynes-Taggart.

J.   CLASS SC10:   Class SC10 consists of the allowed secured claim of Tax Management Services.

K.   CLASS SC11:  Class SC11 consists of the allowed secured claim of Nathan Olsen.

L.   CLASS SC12:   Class SC11 consists of the allowed secured claim of PFC Loans, LLC.

M.   Class SC13 consists of the contested secured claim of Westmark CU.


3.   UNSECURED CLAIMS

A.   CLASS UC1:   Classification of Unsecured Claims.   The following unsecured claims are critical vendors in order for the Debtor to operate its Landscaping Business.

1.   Silver Creek Supply.

2.   Helena Agri-Enterprises, LLC.

3.   Ben's Welding Repair.

4.   K&R Rental, Inc.& Sales.

5.   Kloepfer Inc.

6.   Don's Irrigation Inc.

7.   High Desert Rock.


B.   CLASS UC2:  Class UC2 consists of all allowed unsecured claims in the estate.

C.   CLASS UC3:  Class UC3 consists of all contested MCA claims in the estate. Lon Montgomery was personal guarantor.

4.   EQUITY INTERESTS

A.   CLASS EI1:  Class EI1 consists of one prepetition equity interest holder, namely, the pre-petition shareholder of the corporation:

Lon E. Montgomery
726 N. 350 E.
Shoshone, ID 83352

B.   CLASS EI2.  Class EI2 consists of the post-petition equity interest holder:

Lon E. Montgomery
726 N. 350 E.
Shoshone, ID 83352

## ARTICLE IV
## DESIGNATION AND TREATMENT OF UNIMPAIRED CLASSES

Classes PC1 are unimpaired by the Debtor's Plan.  All unimpaired classes shall be treated as set forth in Article Four in their respective classes on account and in complete satisfaction of all such allowed claims.

## ARTICLE V
## TREATMENT OF IMPAIRED CLASSES

All impaired classes of claims shall receive the distributions set forth in Article Four on account and in complete satisfaction of all such allowed claims.  All claims specified herein are impaired pursuant to §1124 of the Bankruptcy Code. Contested claims shall receive no distribution under the Plan until such time such claims become allowed claims and only to such extent as such claims are allowed claims.

## ARTICLE VI
## DISTRIBUTIONS--TREATMENT OF CLAIMS AND INTERESTS

1.     PRIORITY CLAIMS:

A.     CLASS PC1:  Class PC1 consists of all allowed claims against the Debtor entitled to priority pursuant to 11 USC §507(a)(2) or §507(a)(3) of the Bankruptcy Code, with the exception of those allowed claims included in Classes PC2, and PC3.  During the term of the Plan, Debtor shall continue to pay post-petition taxes as they are due.  The members of this class include the following:

1.     The Internal Revenue Service, pursuant to 11 USC § 507(a)(2)  ;

2.     The State Tax Commission, State of Idaho, pursuant to 11 USC § 507(a)(2) and  .

B.     CLASS PC2:  Class PC2 consists of all allowed claims having priority by reason of the provision of 11 USC §507(a)(2) and § 330(a).  The members of this class include the following:

1.     Aaron J Tolson, the attorney representing the Debtor in Possession;

2.     Jason L.  Peterson, CPA

3.     Craig Hadden, Hadden Realty

4.     Matthew Grimshaw, Chapter V Trustee

5     Such other professionals as the Court may subsequently approve.

Fees and cost reimbursements shall be paid to members of this Class PC2 in the total amount as allowed by the Court in which the members of this class shall share a pro rata basis from  50%  of the net income derived from Debtor's portion of  the operations of the Debtor, during the term of the Plan.  Any Court approval of such professionals' fees shall be compensated as previously stated, or as otherwise ordered by the Court.

C.      CLASS PC3: Class PC3 consists of all allowed claims having priority by reason of the provision of 11 USC § 507(a)(4).

1. Gem State Staffing:  This class shall be paid a priority wage clam of 130,000 Dollars which shall accrue at no interest and shall be paid in monthly installments which shall be 4,333 per month from April through September of each plan year for the term of the Plan for 5 years. Should the Debtor pay down the balance sooner, the payments shall not be continued as set forth above.

D.      CLASS PC4:  Class PC4 consists of all allowed claims against the Debtor entitled to priority pursuant to 11 USC §507(a)(8), consisting of claims of governmental units for taxes or duties in such amounts as may be allowed by the Bankruptcy Court.  This class includes the claims of the Internal Revenue Service and the State of Idaho, State Tax Commission.  This class shall be paid in full as taxes become due during the plan term.

2.      SECURED CLAIMS:

A. CLASS SC1:  Class SC1 consists of the allowed secured claim of One Main Financial related to VIN-256335 of which Leed Corporation has an equitable interest therein.  An effect of confirmation shall be that $12,812.22 Dollars shall be the allowed amount of this secured claim, which shall be paid in equal monthly installments of 241.78 at a 5% a.p.r. over a term of 60 months commencing in the first full month after the Effective Date.  Debtor chose not to cram down the Claimant to the actual value of the collateral but reserves the right to do so should Claimant object to plan treatment. Claimant shall have thirty (30) days after the Effective Date in which to file an amended proof of claim asserting an unsecured deficiency, which would be paid as a member of class UC2 only.  Failure to timely

submit such an unsecured claim shall constitute a waiver of the unsecured portion of claimant's claim only. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

B. CLASS SC2: Class SC2 consists of the allowed secured claim of Westmark CU related to Claim no. 10 and VIN -258360 of which Leed Corporation has an equitable interest therein. Adequate protection payments in the amount of 687.00 Dollars a month shall be paid until plan confirmation. An effect of confirmation shall be that $34,850 Dollars shall be the allowed amount of this secured claim, which shall be paid in equal monthly installments of 641.82 at a 4% a.p.r. over a term of 60 months commencing in the first full month after the Effective Date. Debtor chose not to cram down the Claimant to the actual value of the collateral but reserves the right to do so should Claimant object to plan treatment. Claimant shall have thirty (30) days after the Effective Date in which to file an amended proof of claim asserting an unsecured deficiency, which would be paid as a member of class UC2 only. Failure to timely submit such an unsecured claim shall constitute a waiver of the unsecured portion of claimant's claim only. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

C. Class SC3 consists of the allowed secured claim of Farm Bureau Finance Company in "Exhibit C" of which Leed Corporation has an equitable interest therein. Adequate protection payments in the amount of 500 Dollars a month shall be paid until plan confirmation. An effect of confirmation shall be that this claim

shall be 35,000 Dollars as the allowed amount of this secured claim. In addition, upon approval from the Court or Plan Confirmation, Farm Bureau will fund an additional 6,977.16 Dollars for the repairs to the 1997 Ford F-800 Dump Truck which will be a total allowed claim amount of 41,977.06 which shall be paid in equal monthly installments of 572.30 at a 7% a.p.r. over a term of 96 months commencing in the first full month after the Effective Date.  Additional Collateral shall be granted for this term period and the funding of the repairs, the additional collateral is as follows:  2007 Utility Flatbed Trailer (VIN No. 32513), 2003 Chevrolet Pickup Silverado (VIN No. 104203), 2000 Chevrolet Pickup (VIN No.112570, and a 2007 Chevrolet Pickup (VIN No. 563553).  *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

D.  CLASS SC 4:  Class SC consists of the allowed secured claim of Wells Fargo Leasing and Equipment Finance in "Exhibit D" of which Leed Corporation has an equitable interest therein. Adequate protection payments in the amount of 911.00 Dollars a month shall be paid until plan confirmation.  An effect of confirmation shall be that $65,500 Dollars shall be the allowed amount of this secured claim, which shall be paid in equal monthly installments of 850.79 at a 2.5% a.p.r. over a term of 84 months commencing in the first full month after the Effective Date. Debtor chose not to cram down the Claimant to the actual value of the collateral but reserves the right to do so should Claimant object to plan treatment. The Tractor does not operate due to a warranty issue and Claimant shall assure that necessary warranty repair work shall be performed promptly by a certified dealer in order for

the Tractor to be operational. Claimant shall have thirty (30) days after the Effective

Date in which to file an amended proof of claim asserting an unsecured deficiency,

which would be paid as a member of class UC2 only.  Failure to timely submit such

an unsecured claim shall constitute a waiver of the unsecured portion of claimant's

claim only.  *Each secured creditor in this class shall retain the lien securing the*

*claim, until the allowed secured claims have been paid as provided herein.*

E.  CLASS SC5:    Class SC5 consists of the allowed secured claim of Red Rock

Capital Group LLC related to the Green Cut Subdivision. Adequate protection

payments in the amount of 1,500.00 Dollars a month shall be paid until plan

confirmation.  Members of this class secured claim is 262,000 Dollars and shall be

paid monthly interest installments of 1,500 Dollars on a sliding scale basis resulting

in the reduction of monthly payments as the 262,000 Dollar Mortgage balance is

reduced as lots are sold and this payment will continue over 60 months or until the

balance is paid in full. Monthly payments will commence the first full month after

the Effective Date. *Each secured creditor in this class shall retain the lien securing*

*the claim, until the allowed secured claims have been paid as provided herein.*

F. CLASS SC6:  Class SC6 consists of the allowed secured claim of Montrose

Investments, LLC related to the Riverview Subdivision.  Members of this class

secured claim are 241,632 of which said balance shall accrue with no interest on

the principal.  Payments shall be paid  upon the sale of each lot for a period of 20

years from the effective date of the Plan and a balloon payment shall be due at the

end of the 20 year term and Debtor shall have the option to prepay with no penalty.

*Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

G.   CLASS SC7:   Class SC7 consists of the allowed secured claim of Gerald Martens.  The allowed secured claim held by members of this class is 111,858.57 and members of this class shall be paid though Landscaping Services as was approved in the prior Leed Plan.   Upon completion of Landscaping Services in 2021, the balance shall be reduced 88,821.50 for services already performed prior to the filing of the petition. Landscaping Services were approved as payment of Gerald Martens claim in the prior Leed Plan. An additional 12,000 Dollars shall be reduced from the remaining claim balance upon full completion of the 2020 project which will leave a balance due on the claim of 11,037.07. This balance shall accrue at 4.75a.p.r. until additional landscape projects are awarded to Leed Corporation from Gerald Martens. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*


H.   CLASS SC8 :   Class SC8  consists of the contested secured claims of  those persons asserted secured claims pursuant to Idaho's UCC1 Lien Statute, namely Landmark Funding, CBSG-Par Funding-Contract Financing, United Company Funding, Fincoast Capital LLC, Mr. Advance LLC, Ibex Funding Group LLC, Crystal Springs Capital Inc., Spartan Business Solutions Inc., and Diverse Capital, LLC.  An effect of confirmation shall extinguish the UCC1 Lien Rights of this Class and the members of this Class shall receive distribution in the Class UC3.

No payments shall be made to members of this class during the pendency of any adversary proceeding brought by the Debtor against members of this class. Lon Montgomery was guarantor.

I. CLASS SC9:  Class SC9 consists of the secured claims of Maynes/Taggart or subsequent parties of interest and the allowed secured claim amount is 220,561.63 which shall accrue at 6% a.p.r.  Upon approval by the Court by Stipulation or by effect of confirmation, the Debtor will allow similar treatment for the claimant that was granted in the prior Leed Corporation Plan which claims arise from Court approved fees and the subsequent recordation in Lincoln County, whereby the claimant asserts its secured interest in the current real estate assets of the Debtor.  Claimant shall receive during the term of this plan a pro-rata disbursement of 72.6% from the net proceeds that are received by the Debtor's portion that is derived from the sale of the real estate assets of the Debtor, and shall receive up to 50% of Debtor's portion of the Landscaping Net Income and shall receive 72.6% of 2,.000 Dollars a Month from April through October of each Plan Year or until the Real Estate assets of the Debtor are liquidated, with no payments from November through March of each Plan Year.  Claimants' secured interest in the net proceeds from the sale of the Debtors real estate and landscaping net income shall expire upon the end of the term of the Plan or upon the liquidation of the real estate assets of the Debtor whichever comes first. Claimant shall receive 40% of its allowed secured claim and accrued interest at the end of the Plan Year 2; 20 % of its allowed secured claim and accrued interest at the end of the Plan Year 3; 20% of its allowed secured claim and accrued interest at the end of the Plan Year 4; and the remaining 20%of its allowed secured claim and accrued interest at the end of the Plan Year 5. Landscaping Services may be credited as payments. In the event Debtor fails to pay as stated herein the Claimant shall have right to judicial foreclosure and may elect to have the Chapter 5 Trustee liquidate in a timely fashion over a 12 month period following the default.  Claimant shall give the Debtor 30

days to cure any such default. There shall be no penalty should claim be paid in full before the end of the Plan Term and in no event shall the Claimant be paid in excess of its approved claim and accrued interest. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

      J.    CLASS SC10: Class SC10 consists of the secured claims of Tax Management Services and the allowed secured claim amount is 4,000 Dollars which shall accrue at 6% a.p.r. The Debtor will allow similar treatment for the claimant that was granted in the prior Leed Corporation Plan which claims arise from Court approved fees and the subsequent recordation in Lincoln County, whereby the claimant asserts its secured interest in the current real estate assets of the Debtor. Claimant shall receive during the term of this plan a pro-rata disbursement of 4% from the net proceeds that are received by the Debtor's portion that is derived from the sale of the real estate assets of the Debtor, and shall receive up to 50% of Debtor's portion of the Landscaping Net Income, and shall receive 6% of 2,.000 Dollars a Month from April through October of each Plan Year or until the Real Estate assets of the Debtor are liquidated, with no payments from November through March of each Plan Year. Claimants' secured interest in the net proceeds from the sale of the Debtors real estate and landscaping net income shall expire upon the end of the term of the Plan or upon the liquidation of the real estate assets of the Debtor whichever comes first. Claimant shall receive 40% of its allowed secured claim and accrued interest at the end of the Plan Year 2; 20 % of its allowed secured claim and accrued interest at the end of the Plan Year 3; 20% of its allowed secured claim and accrued interest at the end of the Plan Year 4; and the remaining 20%of its allowed secured claim and accrued interest at the end of the Plan Year 5. In the event Debtor fails to pay as stated herein the Claimant shall have right to judicial foreclosure and may elect to have the Chapter 5 Trustee liquidate in a timely fashion over a 12 month period following

the default.  Claimant shall give the Debtor 30 days to cure any such default. There shall be no penalty should claim be paid in full before the end of the Plan Term and in no event shall the Claimant be paid in excess of its approved claim and accrued interest. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

   K. CLASS SC11:  CLASS SC11:  Class SC9 consists of the secured claims of Nathan Olsen or subsequent parties of interest and the allowed secured claim amount is 67,839.42 which shall accrue at 6% a.p.r.  Upon approval by the Court by Stipulation or by effect of confirmation, the Debtor will allow similar treatment for the claimant that was granted in the prior Leed Corporation Plan which claims arise from Court approved fees and the subsequent recordation in Lincoln County, whereby the claimant asserts its secured interest in the current real estate assets of the Debtor.  Claimant shall receive during the term of this plan a pro-rata disbursement of 21.4% from the net proceeds that are received by the Debtor's portion that is derived from the sale of the real estate assets of the Debtor, and shall receive up to 50% of Debtor's portion of the Landscaping Net Income,  and shall receive 21.4% of 2,.000 Dollars a Month from April through October of each Plan Year or until the Real Estate assets of the Debtor are liquidated, with no payments from November through March of each Plan Year.  Claimants' secured interest in the net proceeds from the sale of the Debtors real estate and landscaping net income shall expire upon the end of the term of the Plan or upon the liquidation of the real estate assets of the Debtor whichever comes first. Claimant shall receive 40% of its allowed secured claim and accrued interest at the end of the Plan Year 2; 20 % of its allowed secured claim and accrued interest at the end of the Plan Year 3; 20% of its allowed secured claim and accrued interest at the end of the Plan Year 4; and the remaining 20%of its allowed secured claim and accrued interest at the end of

the Plan Year 5. Landscaping Services may be credited as payments. In the event Debtor fails to pay as stated herein the Claimant shall have right to judicial foreclosure and may elect to have the Chapter 5 Trustee liquidate in a timely fashion over a 12 month period following the default. Claimant shall give the Debtor 30 days to cure any such default. There shall be no penalty should claim be paid in full before the end of the Plan Term and in no event shall the Claimant be paid in excess of its approved claim and accrued interest. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

      L.   CLASS SC12:   Class SC12 consists of the allowed secured claim of PFC Loans, LLC related to the Riverview Subdivision.  Members of this class secured claim are 46,368 of which said balance shall accrue with no interest on the principal.  Payments shall be paid be upon the sale of each lot for a period of 20 years from the effective date of the Plan and a balloon payment shall be due at the end of the 20 year term and Debtor shall have the option to prepay with no penalty. *Each secured creditor in this class shall retain the lien securing the claim, until the allowed secured claims have been paid as provided herein.*

      M.   Class SC13 consists of the contested secured claim of Westmark CU. Leed Corporation has no equitable interest in claim no. 11 related to the 2021 Keystone Outback 328RL and no distribution shall be made from this Plan.

3.      UNSECURED CLAIMS:

A.    CLASS UC1:    Classification of Unsecured Claims.    The following unsecured claims are critical vendors in order for the Debtor to operate its Landscaping Business. Upon Court Approval or an effect of confirmation as a critical vendor and upon filing of an allowed claim, such distributions shall be from the UC2 Class on a pro-rata basis with other members of that class.

1.    Silver Creek Supply.

2.    Helena Agri-Enterprises, LLC.

3.    Ben's Welding Repair.

4.    K&R Rental, Inc.& Sales.

5.    Kloepfer Inc.

6.    Don's Irrigation Inc.

7.    High Desert Rock.

B.    CLASS UC2:  Class UC2 consists of all allowed unsecured claims against the Debtor.  The unsecured claims are described in "Debtor's Schedule F" and also may include partially secured claimants, if any, that comply with the requirements to assert an unsecured, deficiency claim as set forth herein below.

The Debtor proposes to pay the undisputed amount to the members of this class and resolve the disputed amounts as described in this plan.  All claims in this class uncontested by the Debtor as well as contested claims in this class that may ultimately be approved by the Court shall receive during each Plan Year during the term of the plan a *pro rata* share of the following respective distributions after payments of obligations of a high priority:

| PLAN YEAR | PERCENTAGE OF NET INCOME |
|-----------|--------------------------|

| One | 50% |
|-----|-----|
| Two | 50% |
| Three | 50% |
| Four | 50% |
| Five | 50% |

**In addition, the net litigation recovery received by the Debtor, if any, shall be paid to members of this class as described above. Notwithstanding anything stated above to the contrary, in no event shall the distribution to members of this class under the Plan be more than 100% of the allowed claim amount.** To the extent that such assumptions stated in the Plan may prove to be incorrect, deficiency claims are filed, and/or objections to claims are filed, such distribution percentage would be adjusted accordingly. After deficiency claims may be filed by secured creditors and added to this class, it is estimated that members of this class shall receive approximately 30 percent of their claim.

The Debtor has provided Estimated Net Income projections in the total amount of approximately 700,000 Dollars in the following Exhibits: ("Exhibit A: Landscaping Income, Exhibit B: Lot Sales, and Exhibit E: Farm Income); however, the aforementioned projections are not a guaranty of a set distribution amount.

The Debtor proposes that members of this class may elect to receive a cap of 50,000 on their claim or whichever is less depending upon the amount of their claim and members of this class who choose this election shall receive a greater percentage of up to 50% of their cap in distributions.

Class UC3 shall receive approved claims though distribution on a pro-rata basis with other member of this Class.

**Secured claimants entitled to an unsecured deficiency under § 506 of the Bankruptcy Code shall have thirty (30) days from the Confirmation Date in which to file an amended**

**proof of claim asserting such deficiency.  Failure to timely file an amended proof of claim**

**asserting such deficiency will be an absolute bar to any claim for a deficiency.  The Debtor**

**shall have the right to object to any asserted deficiency claim, as the Debtor deems advisable.**

The Debtor retains the right to avoid the asserted liens of members of this class, and any other class set forth herein.  No payments shall be made to disputed members of this class during the pendency of any adversary proceeding brought by the Debtor against members of this class.

C.        CLASS UC3.  Class UC3 consists of all the MCA Companies listed in "Debtor's Schedule F" in the Debtor's Estate.  Approved Claims from Members of this Class shall be as follows; The Principal Balances shall be the Net Funds Received by Debtor from the Members of this Class and shall be calculated at an allowed rate of interest in the amount of 10% a.p.r.

Under no circumstances shall fees, factor rates, renewals that charged interest on top of interest, or factor rates on top of factor rates, or any and all other charges of any and all fees, penalties, default provisions, or any and all interest, shall not be calculated and added to the principal balances of the Members of this Class.  Any amounts that have been paid to Members of the Class that exceed this allowed rate of interest for a period of 1 year prior the filing date of 12-31-2020 shall be reduced from the Principal Balances of the Members of this Class.

Debtor believes that Landmark Funding shall receive 16,420 Dollars prior to the disbursement of payments to other Members of this Class. Members of this class shall receive up to 50% of the Debtors portion of net income from the Debtor's Landscaping operations and shall receive this distribution once secured parties in CLASS SC: 9, 10, and 11 have received their allocated portion of net income.  The Debtor reserves the right to retain up to 20% of the Debtors

portion of the net income should capitalization requirements arise for the operations of the Debtor. In no case shall the members in this class receive more than their allowed claims. The estimated Landscape projected net income is in Exhibit A.

In addition, Members of this Class shall receive distribution through disbursement on a pro-rata basis with other members of Class UC2. The projected income in Exhibits A, B, and E are estimated and are not a guarantee of disbursement.

The Debtor retains the right to avoid the asserted claims and liens of members of this class, and any other class set forth herein. No payments shall be made to members of this class during the pendency of any adversary proceeding brought by the Debtor against members of this class.

An effect of confirmation shall not prohibit the Debtor in exercising its rights in adversary proceedings with members of this class. Lon Montgomery was a guarantor.

4.      EQUITY INTERESTS

A.      CLASS EI1:  Class EI1 consists of one interest.  Lon E. Montgomery is the prepetition shareholder of the Debtor.  Members of this class shall not retain any interest in the Debtor after Plan Confirmation, except as members of Class EI2, if applicable, as set forth below, subsequent to the Order of Confirmation.

B.      CLASS EI2: Class EI2 consists of the post-petition equity interest holder, namely, Lon E. Montgomery.  An effect of confirmation shall be that each member of Class EI2 shall be vested with the respective stock ownership in the Reorganized Debtor as set forth below:

| **Name of Post-petition Stockholder** | **Percentage** |
|---|---|
| Lon E. Montgomery | 100% |

AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
March 12, 2021
Page 25

An effect of confirmation shall be to extinguish the equity interest of the prepetition shareholders and vest ownership of the Debtor in the above named equity interest holder of this class EI2, with new stock certificates being issued representing an interest in the reorganized Debtor.  No cash distributions shall be made to members of this class, <u>on account of their respective equity interests</u>, during the term of the Plan.

## ARTICLE VII
## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

Unless specifically rejected herein, or in previous orders of this court, Debtor has or is assuming in this Plan of Reorganization the executory contracts and unexpired leases as set forth and described as set forth herein below.

*LEASEHOLD INTERESTS/EXECUTORY CONTRACTS*

Debtor has no further prepetition leases to either accept or reject, other than those specifically provided in this section:

| PARTY | PROPERTY | ASSUME/REJECT/MODIFICATIONS |
|---|---|---|
| Western Waste<br>70 West Frontage Road N<br>Jerome, Idaho 83338 | Storage Container located 726 N 350 E , Shoshone, ID | Assume.  Debtor will continue to provide monthly Lease payments post-petition until June 1st 2021 at which time the container will be surrendered. |
| Gem State Storage.<br>PO Box 769<br>Shoshone, ID 83352 | Storage Unit Located on North Greenwood in Shoshone, ID | Assume.  Debtor is current with no default and will continue with lease post-petition pursuant to lease terms. |
| Northside Developers LLC<br>PO Box 2292<br>Twin Falls, Idaho 83303 | Phases 2 ,3, and 4 of Green Cut Subdivision, Shoshone, ID | Assume; Debtor is 50% owner of Northside Developers and has joint interest with Northside Developers in any Development Agreements with Lincoln County and any agreements with the Green Cut Homeowners Association. The Debtor will continue to service post post-petition the Mortgage to Red Rock Capital Group, LLC pursuant to the terms for Cash Collateral and conditions of the Confirmed Plan.  The Debtor will share 50% of net proceeds from the sale of lots with North Canyon Properties, LLC whom is the other 50% owner of Northside Developers, LLC. to the Cap of 150,000 of which |

time Leed Corporation will obtain 100% ownership of Northside Developers LLC.

| | | |
|---|---|---|
| Maynes/Taggart<br>1449 E. 17th Ste. A<br>Idaho Falls, Idaho 83404 | Office of Maynes Taggart, Rob Maynes Residence, and Steve Taggart Residence, Idaho Falls, Idaho | Assume and Complete Sprinkler Contracts in the amount of 35,212 Dollars. |
| Gerald Martens<br>621 N. College Road<br>Twin Falls, Idaho 83301 | Landscape Projects located in Twin Falls Idaho | Assume and Complete Landscape Contracts and Receive Credit against Claim. |
| Boesiger's Repair LLC<br>1263 Langford Way<br>Twin Falls, Idaho 83301 | LS Tractor and Equipment | Assume. Debtor requires that Boesiger's Repair LLC complete warranty work on Tractor. Currently the Tractor is not running. In the event Boesiger's fails to Repair the LS Tractor pursuant to Warranty Specifications for proper operation then the Debtor may proceed with an adversary proceeding to recover the purchase price of 78,000 for the LS Tractor and equipment. |
| Lon & Rebecca Montgomery<br>726 N. 1360 E.<br>Shoshone, ID 83352 | Equipment Lot located at 726 N. 350 E., Shoshone, ID | Assume. Debtor is current with no default and will continue with lease post-petition. |

To the extent that there are any prepetition leases/executory contracts that have not been accepted or rejected previously, such leases/executory contracts are hereby rejected.

The Debtor may enter into various leases post-petition in the ordinary course of business. While the Debtor believes it is not necessary to assume or reject these agreements, to the extent necessary the Debtor expressly assumes all such leases.

## ARTICLE VIII
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN
## AND MEANS FOR EXECUTION OF THE PLAN

1.    For a period of five (5) years from the effective date of the plan, (the "Plan Term"), funds necessary for the satisfaction for creditors' claims shall be generated from the following sources:

A. LANDSCAPING OPERATIONS: 50 (Fifty-percent) of the Net Income generated from Debtor's landscaping operations annually shall be dedicated to fund the Plan as set forth herein.

The remaining fifty-percent shall be used to fund ongoing landscaping operations on an annual basis or be used to pay secured creditors.

B. FARMING OPERATIONS: 100 (One hundred) percent of the Net Income generated from the Debtor's farming operations annually shall be dedicated to fund the Plan as set forth herein. An effect of confirmation authorizes the farming operations of the Debtor in Exhibit E.

C. SALE OF REAL PROPERTY: 100 (One hundred) percent of the Net Proceeds or Income from Leed Corporations portion generated from the sale of Only Lots in the Green Cut Subdivision and Riverview Subdivision which shall be dedicated to fund the Plan as set forth herein.

D. NET LITIGATION RECOVERY: One hundred percent of the Net Litigation Recovery, if any, shall be dedicated to fund the Plan as set forth herein.

2.    Debtor shall pay all administrative expenses in full, as approved by the Court, pursuant to the terms of this Plan.

3.    Notwithstanding any other provision of this Plan of Reorganization, disputed claims as set forth in the Debtor's Bankruptcy Schedules on file herein and claims which may be contested shall be paid only upon their allowance by the Bankruptcy Court in conformance with the classification of the allowed amount of such claim as set forth herein.

4.    All property of the Debtor shall be retained by the Debtor, except as specifically provided for otherwise hereinbefore.

5.    The Debtor shall retain and may enforce any civil action, claim, or interest against any party whatsoever while the Plan is in effect.

6.    The Debtor may elect to contest various claims filed by creditors.

## ARTICLE IX
## MODIFICATION OF PLAN

1.    Modifications of the Plan may be proposed in writing by the Debtor at any time before confirmation, provided that such Plan, as modified, meets the requirements of 11 USC §§ 1122 and 1123, and the Debtor have complied with 11 USC §1125 of the Code.

2.      In addition, the Plan may be modified at any time after confirmation and before its substantial consummation, provided that such Plan, as modified, meets the requirements of 11 USC §§1122 and 1123 of the Code and the Court, after notice and a hearing, confirms such Plan as modified, under 11 USC §1129 of the Code, and the circumstances then existing justify such modifications.

3.      A holder of a claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

4.      Any modification of the Plan will supersede and render null and void the previous provision that was modified.

5.      The Debtor may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the final Order of the Court confirming the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of claimants or interest holders are not materially or adversely affected.

## ARTICLE X

## LIQUIDATION ANALYSIS FOR THE LEED CORPORATION

If this case were converted to Chapter 7 liquidation bankruptcy the following assumption of loss would occur:

Sales Commission and Administrative fees   10%

50% Formula for liquidation value based upon BPO; Actual Liquidation Value:

SECURED REAL PROPERTY

1.      35 Acres of Real Property -

Value:                                   $157,500

Less Cost of Sale and Liquidation Fees:   $15,750

Debt:

Gerald Martens                                    $110,000

Maynes, Taggart                                   $220,561

Nathan Olsen                                       $67,839

Tax Management Services                            $4,000


Amount left after liquidation:                       $00


2.      Green Cut Subdivision (Jointly owned

        With Northside Developers)

        Value:                                    $1,291,360

        Debtor's Interest                           $645,680

        Quick Sale Value of Sale According to BPO   $322,840

        Less Cost of Sale and Liquidation Fees:     $129,136

        Debt

            Red Rock Capital Group, LLC             $260,000

            Maynes, Taggart                         $220,561

            Nathan Olsen                             $67,839

        Tax Management Services                      $4,000

        Amount left after liquidation:                   00


3.      Riverview Subdivision

        Value:                                      $324,000

        Less Cost of Sale:                           $64,800

        Debt:

            Montrose Investments & Premium Finance   $241,632

            PFC Loans                                 46,368

| | |
|---|---|
| Maynes, Taggart | $220,561 |
| Nathan Olsen | $67,839 |
| Tax Management Services | $4,000 |
| Amount after liquidation | 00 |

The total projected amount available for distribution after liquidation of the secured real properties is **$00.**

## UNSECURED REAL PROPERTY

1. Partial Lot: Parcel #RPS011130020410A

| | |
|---|---|
| Value: | $3,140 |
| Less Cost of Sale | $314 |
| Maynes, Taggart | $220,561 |
| Nathan Olsen | $67,839 |
| Tax Management Services | $4,000 |
| Amount left after liquidation | 00 |

2. Partial Lot: Parcel RPS0100011016BA

| | |
|---|---|
| Value | $2,520 |
| Less Cost of Sale | $252 |
| Amount left after liquidation | $2,512 |
| Maynes, Taggart | $220,561 |
| Nathan Olsen | $67,839 |
| Tax Management Services | $4,000 |
| Amount after liquidation | 00 |

The total amount available for distribution after liquidation of unsecured personal properties is **$00**.

## PERSONAL PROPERTY

AMENDED CHAPTER 11 PLAN OF REORGANIZATION—THE LEED CORPORATION
March 12, 2021
Page 31

Under the schedules, the total value of Debtor's

| | |
|---|---|
| Personal Property Depreciation Schedules Cost Basis | $705,663.00 |
| Actual Liquidation Value is 50% | $352,830.00 |
| Amount of Secured Debt against Personal Property | $419,906.60 |
| Amount left after secured creditors | $00 |
| Less Cost of Sale | $28,260 |
| Amount left after liquidation | **$00** |

Based upon the forgoing analysis, the amount left total amount left to pay unsecured creditors' claims after liquidation would be:

| | |
|---|---|
| 1. After sale of secured real property: | $00 |
| 2. After sale of unsecured real property; | $00 |
| 3. Amount left after sale of personal property | $00 |
| **TOTAL:** | **$00** |

As stated in the Debtor's schedules there is $1,722,070.30 owed as nonpriority unsecured claims not including deficiency claims from secured creditors. The amount to distribute for all of these claims in Chapter 7 liquidation would be the sum of **$00**.

## ARTICLE XI
## RETENTION OF JURISDICTION

Until this Plan has been fully consummated through the entry of an order completely closing the case, the Bankruptcy Court shall retain jurisdiction over all matters necessary to ensure that the purposes and intent of this Plan are carried out, including but not limited to the following:

1.      Determination of requests for payment of claims entitled to priority under §507(a)(2) of the Code, including compensation of parties entitled thereto;

2.      In the event an appeal is perfected from the order confirming the Plan, the Court shall also retain jurisdiction appropriate to protect the interests of the estate and to enter such orders as are necessary to protect the interests of creditors during the pendency of such appeal;

3.      Hear and determine any objection to a claim or interest when such objection is filed with the Court by the Debtor;

4.      Hear and determine all questions and disputes regarding title to the property of the Debtor or the Debtor's estate;

5.      Correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purpose and intent of the Plan;

6.      To liquidate damages in connection with any disputed claims;

7.      To adjudicate all claims of a security or ownership interest in any property of the estate or in any proceeds thereof;

8.      To allow and classify claims of any creditor, reexamine claims as provided under the Code, and to hear and determine any objection to a claim or interest when the Debtor files such objection with the Court;

9.      Issue any order necessary to implement the Plan or order of confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Debtor's estate, and the reorganized Debtor in its estate from actions of creditors, interest holders, or other parties in interest;

10.     Hear and determine any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any party in interest with respect thereto and correct any defect, cure any omission, or reconcile any consistency in the Plan or the order of confirmation as may be necessary to carry cut the purpose and intent of the Plan;

11.     To hear and determine any modification of the Plan pursuant to §1127 of the Bankruptcy Code;

12.     To hear and determine any dispute, claim for relief application, adversary proceeding or contested matter pending commenced on or commenced after the confirmation date involving the collection or liquidation of assets of the Debtor, including, without limitation, any proceeding commenced for the purpose of voiding, recovering or preserving for the benefit of the estate any transfer of property, obligation incurred by the Debtor, lien or setoff. Such retention of jurisdiction will continue over any action filed prior to the entry of a final decree closing this case;

13.     Hear and determine any matter related to the assumption, assignment, or rejection of an executory contract or unexpired lease of the Debtor; and

14.     Entry of a final decree or order closing this Chapter 11 case.

Nothing contained herein shall be construed as restricting the Debtor in the conduct of its business and operation unless the plan specifically provides to the contrary.

## ARTICLE XII
## DISCHARGE

Except as otherwise provided for in the Plan or in the order of Confirmation, entry of the Order of Confirmation acts as a discharge effective as of the effective date of the Plan, of (i) any and all claims arising or occurring prior to the effective date, and (ii) any and all claims of the kind specified in §§ 502(g), 502(h), or 502(i) of the Code.  Such discharge will be effective under §1141 of the Code whether or not a Proof of Claim is filed or deemed filed, such claim is allowed, or the holder of such claim has accepted the Plan.  Further, confirmation of the plan terminates all rights and interests of pre-petition equity security holders as set forth in the Plan.

## ARTICLE XIII
## EFFECT OF CONFIRMATION

In addition to provisions stated elsewhere in this Plan that take effect upon confirmation, the following provisions shall also apply upon confirmation:

1.     Upon confirmation of the Plan all property of the estate shall vest in the Debtor, and shall be held and owned by the Debtor, free and clear of all liens, claims and interests of all creditors of the Debtor, except to the extent provided for in the Plan.

2.     Upon confirmation of the Plan, any and all compromises contained within the terms of the Plan shall be deemed to be approved by the Court pursuant to F.R.B.P. Rule 9019.

3.      Pending performance and completion of the Plan and unless the Court has otherwise expressly ordered or this Plan otherwise expressly provides, all creditors, shall be stayed from proceeding against the Debtor, the Debtor's assets, or the assets of the estate.

**ARTICLE XIV**
**PREPAYMENT OF CLAIMS**

The Debtor reserves the right to prepay any or all of the claims hereinabove set forth, without penalty.  No notice of prepayment shall be required.

**ARTICLE XV**
**MISCELLANEOUS**

1.      The headings in the Plan are for the convenience of reference only and neither constitutes a portion of the Plan nor in any manner affects the construction or meaning of the provisions of the Plan.

2.      The authority of the Debtor to agree to modifications, supplements or amendments of or to any agreements or instruments referred to in the Plan or utilized in the Debtor's business shall be as provided in such agreement or instruments, and subject to applicable Idaho law.

3.      Except to the extent that the Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed and construed and enforced in accordance with the laws of the State of Idaho.

4.      The rights, duties and obligations of any person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors or assigns of such person. The terms, provisions and statements of fact depicted in the Disclosure Statement are hereby incorporated as if set forth in full herein by reference and constitute terms of this Plan.

5.      Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

6.      Any notice, pleading, or document, required to be served by law or according to the provisions of this Plan, shall be in writing and shall be served in person or by Certified Mail upon the Debtor as follows:

| | |
|---|---|
| Debtor: | The Leed Corporation<br>Lon E. Montgomery, President<br>P.O. Box 2292<br>Twin Falls, ID  83303-2292 |
| Attorney for Debtor | Aaron J. Tolson<br>*Attorney at Law*<br>2677 E. 17th St. #300<br>Ammon, ID. 83406 |

Or at such other address that Debtor may designate in writing in a Notice of Change of Address filed with the Court or served upon creditor(s).

7.      *Reserved.*

## ARTICLE XVI
## BALLOTING PROVISIONS

1.      Attached hereto is a Ballot for Accepting or Rejecting the Amended Chapter 11-Subchapter 5 Plan of The Leed Corporation to use for the purpose of voting for or against the Plan previously provided to you by said Debtor.

2.      That attached also is the budget which will be relied upon with respect to said Plan.

DATED:        March 12, 2021

THE LEED CORPORATION

By:_____
LON E. MONTGOMERY
President

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 20-40984 JDP |
| LEED CORPORATION (THE), | Chapter 11 Subchapter V |
| Debtor. | |

BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION

The Debtor, The Leed Corporation filed an Amended Chapter 11 – Subchapter 5 Plan of

Reorganization and the dated March 12, 2021 ("the Plan") for the Debtor in this case.

**You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If you ballot is not received by Debtor's attorney, Aaron J. Tolson, on or before <u>April 15, 2021</u>, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**VOTER: Choose below:**

1. The undersigned has as :

        _____ Secured claim
        _____ Priority claim
        _____ Unsecured nonpriority claim

Against the above-named debtor in the unpaid principal amount of $ _____, and hereby:

_____ Accepts the proposed Plan
_____ Rejects the proposed Plan

DATED: _____
Print or type name of business:
By: (if appropriate)                    _____
Title: (if appropriate)                 _____

Signed:                                 _____
Address:                                _____

**THIS BALLOT MUST BE SUBMITTED ON OR BEFORE MARCH 19, 2021 TO:**

Aaron J. Tolson, Esq.
TOLSON & WAYMENT, PLLC
2677 E. 17TH Street, Suite 300
Ammon, ID 83406

| Plan Year.Month | PY1.1 April | PY1.2 May | PY1.3 June | PY1.4 July | PY1.5 August | PY1.6 Sept. |
|---|---|---|---|---|---|---|
| **Landscaping Income** | | | | | | |
| Beginning Cash Balance | 7,000 | 5,660.35 | 15,522.66 | 33,112.97 | 52,880.28 | 72,647.59 |
| Gross Landscaping Income | 110,000 | 120,000 | 140,000 | 150,000 | 150,000 | 120,000 |
| **Cash Disbursements** | | | | | | |
| Fuel. Supplies, Vehicle Licensing | 7,700 | 7,998 | 8,950 | 9,597 | 9,597 | 7,998 |
| Insurance. Commercial-Liability | 1,150 | 1,150 | 1,150 | 1,150 | 1,150 | 1,150 |
| Phones | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| Labor and Subcontractions | 42,000 | 44,900 | 49,900 | 52,796 | 52,796 | 44,900 |
| Parts-supplies, Equipment Rent. | 39,500 | 41,950 | 47,900 | 52,050 | 52,050 | 41,950 |
| Advertising, Office Supplies | 950 | 950 | 1,050 | 1,050 | 1,050 | 950 |
| Repairs, Mantenance, Rental | 1,800 | 1,950 | 2,220 | 2,350 | 2,350 | 1,950 |
| **Plan Payments** | | | | | | |
| SC1 | 241.78 | 241.78 | 241.78 | 241.78 | 241.78 | 241.78 |
| SC2 | 641.82 | 641.82 | 641.82 | 641.82 | 641.82 | 641.82 |
| SC3 | 572.3 | 572.3 | 572.3 | 572.3 | 572.3 | 572.3 |
| SC4 | 850.79 | 850.79 | 850.79 | 850.79 | 850.79 | 850.79 |
| SC5 | 1,500 | 1,500 | 1500 | 1,500 | 1,500 | 1,500 |
| SC9 | 1,452 | 1,452 | 1,452 | 1,452 | 1,452 | 1,452 |
| SC10 | 120 | 120 | 120 | 120 | 120 | 120 |
| SC11 | 428 | 428 | 428 | 428 | 428 | 428 |
| PC3 | 4,333 | 4,333 | 4,333 | 4,333 | 4,333 | 4,333 |
| Total Payments-Disb. | 104,339.65 | 110137.69 | 122409.69 | 130232.69 | 130232.69 | 110137.69 |
| Net Income | 5,660.35 | 9,862.31 | 17,590.31 | 19,767.31 | 19,767.31 | 9,862.31 |
| Total Net Income | | | | | | 82,509.90 |

**EXHIBIT A Page 1**

| Plan Year.Month | PY1.7 October | PY1.8 November | PY1.9 December | PY1.10 January | PY1.11 February | PY1.12 March |
|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | | | | | | |
| Gross Landscaping Income | 82,509.90 | 86,517.60 | 91,310.91 | 93,054.22 | 94,797.53 | 99,519.84 |
| | 100,000 | 83,000 | 43,000 | 43,000 | 63,000 | 83,000 |
| **Cash Disbursements** | | | | | | |
| Fuel. Supplies, Vehicle Licensing | 7,400 | 6,500 | 3,000 | 3,000 | 4,662 | 6,500 |
| Insurance. Commercial-Liability | 1,150 | 1,150 | 1,150 | 1,150 | 1,150 | 1,150 |
| Phones | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| Labor and Subcontracting | 40,500 | 32,900 | 17,500 | 17,500 | 25,515 | 32,900 |
| Parts-supplies, Equipment Rent. | 38,500 | 30,000 | 13,700 | 13,700 | 20,160 | 30,000 |
| Advertising, Office Supplies | 950 | 950 | 450 | 450 | 750 | 950 |
| Repairs, Mantenance, Rental | 1,800 | 1,800 | 550 | 550 | 1,134 | 1,800 |
| **Plan Payments** | | | | | | |
| SC1 | 241.78 | 241.78 | 241.78 | 241.78 | 241.78 | 241.78 |
| SC2 | 641.82 | 641.82 | 641.82 | 641.82 | 641.82 | 641.82 |
| SC3 | 572.3 | 572.3 | 572.3 | 572.3 | 572.3 | 572.3 |
| SC4 | 850.79 | 850.79 | 850.79 | 850.79 | 850.79 | 850.79 |
| SC5 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| SC9 | 1,452 | 0 | 0 | 0 | 0 | 0 |
| SC10 | 120 | 0 | 0 | 0 | 0 | 0 |
| SC11 | 428 | | | | | |
| Total Payments-Disb. | 97206.69 | 78206.69 | 41256.69 | 41256.69 | 58277.69 | 78,207 |
| Net Income | 2,793.31 | 4,793.31 | 1,743.31 | 1,743.31 | 4,722.31 | 4,793.31 |
| Total Net Income | | | | | | 104,313.15 |
| Beginning Cash Balance | | | | | | 7,000 |
| Total Income | | | | | | 111,313.15 |

| | | Estimated |
|---|---|---|
| Plan Year 1 | 111,313.15 | |
| Plan Year 2 | 105,877.85 | 1.5% Increase |
| Plan Year 3 | 107,783.65 | 1.8% Increase |
| Plan Year 4 | 109,831.54 | 1.9% Increase |
| Plan Year 5 | 112,028.17 | 2% Increase |
| Total Est. Net Income | 546,834.36 | |
| 50% Net Income UC2 | 273,417.18 | |

EXHIBIT A Page 2

Green Cut Subdivision Lot Values supported by the Hadden Realty BPO;
159,600  Phase 2, 4 remaining developed lots currently listed at 39,900 each
458,584  Phase 3, 28 platted lots at 16,378 each
388,700  Phase 4, 26 platted lots at 14,950 each
100,000  Phase 3-2 lots, Phase 3-2 lots 25,000 each; utilities present, paving remaining

1,106,884   Total estimated value for 62 lots

Expenses;
    262,000 Mortgage; Red Rock Capital Group, LLC
150,000 50-50 Split Cap by Northside Developers to North Canyon Properties, LLC
 66,413   Realtor fees at 6%
  5,000   Estimated closing costs
170,000   Maynes-Taggart
 50,000   Nathan Olsen
  4,000   Tax Management Services
707,413   Total Expenses

399,471   Estimated Net Income Green Cut Subdivision Lots


323,190; Total estimated value for 27 platted lots at 11,970 each in the Riverview
Subdivision,

Expenses;

288,000 Montrose Investments, Premier Financial Balance

 19,391   Realtor Fees at 6%

  1,000   Estimated Closing Costs

308,391

14,799 Estimated Net Income Riverview Subdivision Lots

414,270 Total Estimated Net Income for the UC2 Class from the sale of Lots in Green
Cut & Riverview Subdivisions during the plan term period.

According to the Hadden Realty BPO, further development of lots with construction of
homes appears to be relevant for continued sales in the market during the plan period
and a quick-sale liquidation may render a 50% or greater reduction in values. Such a
reduction in value for the Estate, should the properties be sold on a quick-sale basis,
would render a substantial loss for any opportunity of repayment to the UC2 Class.

EXHIBIT B



EXHIBIT C

SECURITY: As security for this loan, I am giving you what is known as secured interest in

| Description | Identification |
|---|---|
| 1993 FORD LL EXPLORER | 1FMZU34X8WZA65084 |
| 2006 POLARIS MV SPORTSMAN 700 | 4XAMH68A16A925164 |
| 2006 POLARIS MV SPORTSMAN 500 ATV | 4XAMH50A96A933356 |
| 2006 ATV TRAILER WITH SIDE RAMPS | SN8PSBA09127L005915 |
| 1993 CHEVROLET 4X4 1/2 TON PICKUP | 1GCEK14K7PE21266 |
| 1986 CHEVROLET 1/2 TON PICKUP | 1GCDC14H7GS149972 |
| 2000 NISSAN 4 DOOR SEDAN | 3N1CB51D5YL305879 |
| 2007 HAULMARK 16' ENCLOSED TRAILER | 16HPB16257U055228 |
| 2008 30' GOOSENECK TRAILER WITH RAMPS | ID011101 |
| 18' TANDEM AXLE FLAT-BED TRAILER | A38UTR |
| 16' TANDEM AXLE FLAT-BED TRAILER | 109001624DM075237 |
| 1991 18' TANDEM AXLE FLAT-BED TRAILER | AZ157779 |
| 12' TANDEM AXLE FLAT-BED TRAILER | 254UPZ |
| 16' TANDEM AXLE FLAT-BED TRAILER | 461UHC |
| 1987 16' CHARMAC TANDEM AXLE CATTLE TRAILER | 1C901620041216022 |
| 1980 TOYOTA MID-SIZE PICKUP | RN62091641 |
| 1970 FORD 3/4 TON PICKUP | F25YC564130 |
| 1977 FORD 3/4 TON 4X4 PICKUP | F148LY44418 |
| 1988 33' KOMFORT CAMP TRAILER | 1K42KTFP29J1116138 |
| 1977 29' PROWLER BY FLEETWOOD CAMP TRAILER | 20N3342653LZ5 |
| 2008 12' BOX TRAILER WITH SINGLE AXLE | 31650 |
| 1997 FORD F-800 DUMP TRUCK | 1FDXF80D4VVA40111 |

EXHIBIT D

Equipment Description: 1 New 2020 LS 72' Tiller Finishing Mower
1 New 2020 LS 72' Mower Finishing Mower
1 New 2020 ATTACHMENT 96 Disk Attachments
1 New 2020 New Summit 20x10 Flatbed Utility Trailer S/N: 59KBU202011005677
1 New 2020 New Max 8x16 Dump Trailer S/N: 5R8BD1629LM072235
1 New 2020 ATTACHMENT Yard Bucket Attachments
1 New 2020 LS LB3100 Backhoe S/N: 190823374
1 New 2020 LS XR4150HC Compact Tractors S/N: 2280002061
1 New 2020 LS LL4104 Loader S/N: 1911412286

Equipment Location: 726 N 350 E, Shoshone, ID 83352

| Projected Farm Expenses from 35 acres | Items |
|---|---|
| 5,000 | Fertilizer and Spraying |
| 4,000 | Corn Seed |
| 3,000 | Idaho Power |
| 4,000 | Labor |
| 1,900 | Water |
| 2,000 | Repairs and Maintenance |
| 19,900 | Total Costs |

| Projected Farm Income from 35 acres | |
|---|---|
| 23,250 | 775 ton at 30 per ton |

Estimated Net Income
3,350

16, 750  Estimated For UC2 Class for Plan Term

**EXHIBIT E**